**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Ray Hunter, | No. CV-24-02068-PHX-JAT (CDB) |
| Plaintiff, | **ORDER** |
| v. | |
| Theodora Paul, et al., | |
| Defendants. | |

On March 30, 2026, this Court issued an Order denying summary judgment as to Defendants Dr. Paul and NP Coronado. (Doc. 72). Both Defendants now move for reconsideration. (Doc. 73). Plaintiff has opposed the motion (Doc. 75), Defendants filed a reply (Doc. 76), and Plaintiff filed an impermissible sur-reply (Doc. 79). Plaintiff's response and sur-reply both argue Defendants are not being truthful regarding whether they mailed Plaintiff a copy of the motion. The Court has no ability to determine whether the motion was not mailed, or whether it was mailed, but lost along the way. Thus, the Court will proceed to determining whether reconsideration is warranted.

## I.    Background Facts

As the Court previously recounted in the summary judgment order:

> In his Third Amended Complaint, Plaintiff alleged Defendants provided inadequate post-operative ("post-op") care following his March 8, 2021 hip replacement surgery. (Doc. 8.) Plaintiff alleged that Defendants assessed Plaintiff's worsening and severe leg swelling and burning pain as simply post-op swelling. (*Id.*) Approximately 2 1/2 weeks after surgery, the severe swelling caused the surgical staples in Plaintiff's leg and hip to burst open, and fluid and pus drained out. (*Id.*) Plaintiff was returned to the surgeon, who recommended a second surgery to clean out the infection as

soon as possible. (*Id*.) Plaintiff did not receive the necessary surgery until April 19, 2021. (*Id*.) Plaintiff further alleged that, thereafter, he became very ill and was finally sent to the hospital, where he was treated for sepsis and a kidney infection that resulted from his original, untreated infection. (*Id*.)

(Doc. 72 at 1-2).

## II. Deliberate Indifference

As this Court has previously explained:

"Denial of medical attention to prisoners constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoner." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. Under the objective prong, a prisoner must show a "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (citation omitted).

Under the subjective prong, a prisoner must show: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096). The state of mind required for deliberate indifference is subjective recklessness; however, the standard is "less stringent in cases involving a prisoner's medical needs ... because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact, and a factfinder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (quotations and citations omitted). Deliberate indifference may also be shown by the way in which prison officials provide medical care, *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), "by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm," *Lolli v. Cty. of Orange*, 351 F.3d 410, 421 (9th Cir. 2003), or by a purposeful act or failure to respond to a prisoner's pain or possible medical need, even if a prisoner cannot show that his harm was substantial, *Jett*, 439 F.3d at 1096; *see also McGuckin*, 974 F.2d at 1060 ("[A] finding that the defendant's activities resulted in 'substantial' harm to the prisoner is not necessary."). Nevertheless, the deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm*, 680 F.3d at 1122 (citations omitted). Further, a mere difference in medical opinion does not establish deliberate indifference.

- 2 -

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

*Wellever v. Ryan*, No. CV 15-0634-PHX-JAT (JZB), 2016 WL 7187927, at *3 (D. Ariz. Dec. 12, 2016).

**III.    Motion for Reconsideration**

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

Defendant argues that reconsideration is warranted because the Court "committed a clear error based on the case law and/or inferences it relied upon to deny Defendants' Motion for Summary Judgment as to them or that decision is manifestly unjust." (Doc. 73 at 2).  In general, Defendants reargue the same evidence the Court already spent 27 pages discussing. (*See* Doc. 72).

**IV.    Discussion**

The Court will consider the arguments as to each Defendant separately as follows.

- 3 -

### A.   Dr. Paul

With respect to Dr. Paul, Defendant's primary argument is that the Court erred by considering Plaintiff's affidavit as "evidence" of a fact anytime the affidavit is contradicted by the medical records Dr. Paul and her co-workers created.  (Doc. 73 at 2-3).  In other words, Plaintiff's various encounters with the medical staff were catalogued by that medical staff at the prison.  At times, Plaintiff's affidavit disputed the summary of those encounters as recounted in the medical record.  For example, Defendants argue:

> With respect to the March 22, 2021, ICS, there is no record of Dr. Paul seeing him that day, yet Plaintiff insists she was there. However, when Defendants set forth evidence of NP Coronado's encounter with him on March 10, 2021, supported by her affidavit and corresponding medical record, Plaintiff then also insists that the encounter never took place.

(Doc. 73 at 3).  Defendant then argues, "While this Court is obligated to view the evidence in the light most favorable to Plaintiff, Plaintiff's uncorroborated and self-serving testimony is insufficient to defeat summary judgment, particularly where it is contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007)…." (*Id*. at 3).

Defendant is incorrect as a matter of law and fact.  First, in *Scott*, the Supreme Court held that the Court need not consider self-serving testimony that is contradicted by *video* evidence.  *Scott*, 550 U.S. 380-81 (holding that lower courts should view the facts in the light depicted by the clear and undisputed video tape, rather than crediting a version of the facts that is clearly contradicted by the video tape).  Here, there is no video of when Plaintiff saw various medical providers, nor what occurred during those encounters, so *Scott* is inapposite.

Second, Plaintiff's affidavit is his recollection of his own medical appointments.  The "medical record" is Defendants' recollections of Plaintiff's medical appointments as summarized in various treatment notes.  So, for example, it is plausible that Dr. Paul saw Plaintiff March 22, 2021 but no one noted that in the medical record.  And Plaintiff has avowed that such an encounter occurred.  This is a classic dispute of fact that a jury must decide. In other words, the Court cannot choose to credit the records kept by Defendants over Plaintiff's own recollections about the same events.  Defendant Paul's arguments to

the contrary are foreclosed by the summary judgment standard.

Alternatively, Defendant Paul argues that even if she did see Plaintiff on the relevant date, there is no evidence that Dr. Paul actually perceived Plaintiff had an active and worsening infection. Thus, Defendant Paul argues that any failure on her part to correctly assess Plaintiff's condition was at most a misdiagnosis. (Doc. 73 at 4).

The Court spent significant time recounting the medical record in the summary judgment order. (Doc. 72 at 5-18). The Court will not reproduce that complete record here. However, as that record details, reasonable inferences can be drawn to support that Dr. Paul perceived of and failed to address Plaintiff's serious medical needs.

Specifically, the Court recounted:

> According to Plaintiff's facts, when Plaintiff saw Dr. Paul on March 15, 2021, he immediately informed her that his right leg was swollen, aching, and burning with pain, and that he thought his leg was infected. (Doc. 67-1 ¶¶ 35, 37; Doc. 67-1 at 48.) These were new symptoms that had developed since Dr. Paul had seen Plaintiff on March 12, 2021. In response to Plaintiff's new symptoms, Dr. Paul stated it was post-op fluid that would drain on its own, and she made no change to Plaintiff's plan of care. (*Id*.; Doc. 35- 6 at 12.) A week later, on March 22, 2021, Dr. Paul saw Plaintiff after he was brought to the Medical Hub for the ICS. (Doc. 67-1 ¶¶ 53–54.) At this time, both of Plaintiff's legs were swollen and burning, and Plaintiff had large blisters on his right foot. (Doc. 35-2 at 133–134.) Dr. Paul opined again that it was just post-op swelling, despite Plaintiff's report that he never experienced such symptoms with prior hip surgeries. (Doc. 67-1 ¶¶ 54–55.)
>
> On this record, Plaintiff has stated under oath that Dr. Paul was aware of Plaintiff's pain and swelling, was aware that swelling affected both legs, knew that blisters developed on Plaintiff's foot, and knew that Plaintiff's symptoms were worsening despite being two weeks post surgery. A reasonable jury could find that Dr. Paul was subjectively aware of Plaintiff's serious medical needs.
>
> Further, even if Dr. Paul failed on her own to infer the serious risk of harm to Plaintiff from an infection due to his post-op status, the medical records repeatedly assessed a risk of infection. (*See, e.g.*, Doc. 35-2 at 38, 47, 56, 65, 83, 92.) For purposes of summary judgment, the Court infers that Dr. Paul was aware of Plaintiff's medical records documenting his post-op status and his ongoing risk for infection. *See Jett*, 439 F.3d at 1094, 1097 (finding that as the party opposing summary judgment, the plaintiff was entitled to an inference that the defendant prison doctor was aware of information in the plaintiff's medical records and aware of medical slips the plaintiff continued to submit asking to be sent to a specialist for treatment for a fractured thumb). The record shows that, despite the known risk of infection, and in response to Plaintiff's aching and burning pain, and swelling that eventually affected both legs, Dr. Paul did not make any change to Plaintiff's treatment.
> …
> Here, the only action Dr. Paul took in response to Plaintiff's pain was on March 16, 2021, when she renewed his Tylenol 3 prescription. At that time, Dr. Paul took no steps, such as imaging or labs, to confirm her opinion

that Plaintiff merely had post-op swelling, even though Plaintiff's symptoms had exacerbated since her encounter with him on March 12, 2021. There is no evidence that, on March 22, 2021, Dr. Paul took any action when she allegedly observed Plaintiff's significant swelling in both legs and continued pain that was not alleviated by Tylenol 3. Dr. Paul did not prescribe antibiotics, she did not order x-rays or other imaging to attempt to ascertain the cause of Plaintiff's pain and swelling, she did not prescribe any other pain medication, and she did not provide any medical devices (*e.g.*, wraps, ice, wedge) that might have alleviated Plaintiff's pain. (Doc. 35-6 at 12.) On this record, a reasonable jury could find that Dr. Paul exhibited deliberate indifference to Plaintiff's serious medical needs.

(Doc. 72 at 20-23).

In the motion for reconsideration, Dr. Paul does nothing more than dismiss all of the foregoing as not including a proverbial smoking gun establishing that Dr. Paul perceived that Plaintiff had a severe infection. However, taking all reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that Dr. Paul must have perceived the risk and was deliberately indifferent to it. State of mind "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 843. And here, Plaintiff avows that Dr. Paul knew of Plaintiff's pain and swelling, was aware that swelling affected both legs, knew that blisters developed on Plaintiff's foot, and knew that Plaintiff's symptoms were worsening despite being two weeks post surgery. These facts, coupled with the many notations in Plaintiff's records that there was a risk of infection post surgery, are sufficient for a jury to find that the risk that Plaintiff had an actual infection was obvious to Dr. Paul and that she disregarded it.

Thus, the motion for reconsideration as to Dr. Paul is denied.

**B.     NP Coronado**

Defendant NP Coronado also argues that this Court erred in denying her motion for summary judgment.

On summary judgment, this Court held:

The record reflects that NP Coronado responded to and attempted to treat Plaintiff's condition and pain. Thus, the issue before the Court is whether NP Coronado's ineffective treatment can, as a matter of law, be categorized as, at most, incompetence or gross negligence entitling her to

- 6 -

summary judgment.

The Court finds that between when Plaintiff first started complaining of symptoms that were consistent with a post-op infection on March 15, 2021, and Plaintiff's June 1, 2021, hospitalization for kidney failure and sepsis from the post-op infection, a jury could conclude that NP Coronado's actions rose to deliberate indifference by not taking more urgent or aggressive action in the face of Plaintiff's deteriorating condition. *See Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (noting that failure to provide *competent* treatment for a serious medical condition, even if some treatment is provided, may constitute deliberate indifference in a particular case). Thus, summary judgment will be denied as to the medical care claim against NP Coronado.

(Doc. 72 at 25) (footnote omitted).

Defendant Coronado moved for reconsideration arguing that her deficient treatment did not rise to the level of deliberate indifference. (Doc. 73 at 4-6). Defendant also argues that the Court erred in relying on *Ortiz* because it is distinguishable.

With respect to the *Ortiz* case, Defendant Coronado argues that the Court erred in relying on *Ortiz* because,

In *Ortiz*, the defendant medical providers received specific warnings from a prior doctor that Plaintiff had a head injury and that it could present complications. *Id*. When Plaintiff began to exhibit symptoms of such complications, including falling down, a defendant, without examination, prescribed him sedatives that were contraindicated, and he later died as a result of his head injuries. *Id*. The Court found that the nurses and doctor knew of Plaintiff's head injury but "disregarded evidence of complications to which they had been specifically alerted and, without an examination, prescribed sedatives that were contraindicated" and found that it could not say as a matter of law the defendants were not deliberately indifferent to Plaintiff's medical needs. *Id*. [at] 1314. … Here, there was no point at which NP Coronado was warned of a specific imminent complication and responded with contraindicated treatment without examination.

(Doc. 73 at 6).

The Court notes that the medical record reflects that NP Coronado was warned that Plaintiff faced a risk of post-op infection at least 7 times. (Doc. 72 at 6-14). Further, Plaintiff was diagnosed with a post-op infection (*id*. at 11), and later again diagnosed with a post-op infection (*id*. at 14), and received surgery for the post-op infection on April 19, 2021 (*id*.). The surgeon's office ordered IV antibiotics on April 8, 2021. (*Id*.). However, from April 8, 2021, the record does not reflect Plaintiff was given antibiotics until May 27, 2021. From May 27, 2021 to May 31, 2021, Plaintiff was given two different antibiotics

seemingly for what NP Coronado diagnosed as a urinary tract infection. (*Id*. at 16). NP Coronado made this diagnosis and treatment plan, like the defendants in *Ortiz*, with full knowledge of the risk of a post-op infection, the surgeon's diagnosis of an actual post-op infection, and an order for IV antibiotics, all of which she disregarded. The Court finds that reliance on *Ortiz* was not misplaced, and reconsideration will be denied on this basis.

Notably, the post-op infection eventually became so extreme that, from June 1 to June 7, 2021, Plaintiff was in the hospital with sepsis, pyelonephritis (bacterial kidney infection), anemia, hypertension, hyperlipidemia, and hematuria (blood in urine). (*Id*. at 18).

NP Coronado argues that because she saw Plaintiff numerous times and ordered labs, gave Plaintiff Tylenol, diagnosed him with something–even though she was wrong in her diagnosis–and changed the dressing on his wound, she was not deliberately indifferent as a matter of law. The Court disagrees.

From March 13, 2021 to June 1, 2021 (*id*. at 5-18), either Plaintiff reported, or the medical staff observed, symptoms consistent with a post-op infection at least 29 separate times, but Plaintiff was given antibiotics specifically for a post-op infection only twice (on March 25, 2021 and March 30, 2021; *id*. at 11-13).[1] Further, Plaintiff's labs came back abnormal on 5 occasions, but no plan of action was noted in the file to address these abnormalities. Moreover, labs were ordered 9 separate times, but the results were only noted 5 times. NP Coronado ordering labs, but not doing anything with the results, could allow a jury to find deliberate indifference. Specifically, she knew the labs showed a problem and consciously decided not to act in response to that problem. Finally, prescribing Tylenol does not overcome a potential deliberate indifference claim regarding the post-op infection that caused Plaintiff's hospitalization from June 1 to June 7, 2021.

Thus, considering the record as a whole, like in the *Ortiz* case, the Court finds there is a disputed issue of fact regarding whether NP Coronado failed to provide *competent* treatment for a serious medical condition and whether that deficient treatment constituted

---

[1] Plaintiff was given antibiotics targeting the misdiagnosed urinary tract infection on May 27, 2021 and May 31, 2021. (Doc. 72 at 16).

deliberate indifference.  Thus, the motion for reconsideration will be denied.

**V.     Conclusion**

**IT IS ORDERED** withdrawing the reference to the Magistrate Judge as to the motion for reconsideration (Doc. 73).

**IT IS FURTHER ORDERED** that the motion for reconsideration (Doc. 73) is denied.

**IT IS FURTHER ORDERED** that, the parties must confer among themselves and with their respective witnesses and Defendants shall file a joint notice by <u>August 25, 2026</u>, that proposes at least two dates on which the parties will be prepared to begin trial in this case.[2]  The joint notice must also state whether a jury trial was demanded and whether that demand is contested.  Finally, the joint notice must include an estimated length of trial.

Dated this 31st day of July, 2026.

_____
James A. Teilborg
Senior United States District Judge

---

[2] The Court has a trial scheduled for a significant portion of December 2026; therefore, the parties should not propose dates in December 2026.